**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CARL E. DUNCAN,<br>Plaintiff,<br>v.<br>ROBINSON, *et al.,*<br>Defendants. | 3:18-cv-00168-MMD-CLB<br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Carl E. Duncan ("Duncan") against Defendants Robinson, Rynerson, Johnson, Kelly, Haskell, and John Does[2] (collectively referred to as "Defendants"). Currently pending before the court is Defendants' motion for summary judgment. (ECF Nos. 37, 39).[3] Duncan did not file an opposition. Having thoroughly reviewed the record and papers, the court hereby recommends Defendants' motion for summary judgment (ECF No. 37) be granted.

## I. BACKGROUND AND PROCEDURAL HISTORY

Duncan is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Warm Springs Correctional Center ("WSCC") located in Carson City, Nevada. (ECF No. 8). Proceeding *pro se*, Duncan filed the instant civil rights action pursuant to 42 U.S.C. § 1983, seeking declaratory relief and monetary damages. (*Id.*)

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] Pursuant to the scheduling order, Duncan was given until February 3, 2020 to identify the Doe Defendants in this case. (*See* ECF No. 30). However, Duncan failed to do so. Therefore, the court recommends the Doe Defendants be dismissed from this action.

[3] ECF No. 39 consists of sealed documents filed in support of the motion for summary judgment.

Pursuant to 28 U.S.C. §1915A(a), the District Court screened Duncan's First Amended Complaint ("FAC") on May 6, 2019. (ECF No. 7). The District Court allowed Duncan to proceed on Counts I and II that alleged Eighth Amendment conditions of confinement violations and failure to protect from unsafe prison conditions. (*Id*.) The District Court also allowed Duncan to proceed on Count III that alleged Fourteenth Amendment equal protection violations. (*Id*.)

**A. Allegations in the Complaint**

The complaint alleges the following: On October 21, 2016, Duncan was housed in unit 4B North in cell #55 at WSCC. (ECF No. 8 at 5). Duncan's cellmate at the time of the violation was Steve Coleman. (*Id*.) The in-cell toilet became backed up and began to overflow on to the cell floor. (*Id*.) Duncan and his cellmate went to the control tower and reported the overflow to Defendants Rynerson and Robinson. (*Id*.)

Duncan and his cellmate approached Defendant Robinson in the unit staff office and requested cleaning supplies to clean up the raw sewage and foul water. (*Id*.) Defendant Robinson became irritated with the conversation and stated in a very aggressive tone, "I said I would look into it." (*Id*.) Defendant Robinson continued the rest of his shift along with Defendant Rynerson without any further contact with Duncan or Duncan's cellmate. (*Id*.)

Duncan and his cellmate were given no alternative but to return to their cell and begin cleaning up the raw sewage and foul water by use of their own towels and other personal clothing. (*Id*. at 6). The complaint alleges that every unit 4B correctional officer was notified of the nonfunctioning toilet; the names of the officers and dates of notification are as follows: October 21, 2016, Defendants Robinson and Rynerson; October 22, 2016, John Doe; October 23, 2016, Defendant Johnson; October 24, 2016, Defendant Kelly; October 25, 2016, Defendant Kelly; October 26, 2016, Defendant Haskell; October 27, 2016, John Doe (tower officer); and October 28, 2016, John Doe (tower officer). (*Id*.)

During the course of the week, as Duncan was reporting his desperate situation to Defendants, at no time did any of the Defendants come to Duncan's cell to investigate.

(*Id*.) On October 26, 2016, Duncan suffered through a lockdown of the entire housing unit for unknown institutional reasons for a four-hour period. (*Id*. at 7). During that lockdown, Duncan requested to use the toilet on the tier and was denied by Defendant Haskell. (*Id*.) After Duncan explained that he did not have a working toilet for the past six days, Defendant Haskell still denied Duncan access to a working toilet. (*Id*.)

On October 28, 2016, Duncan faced another weekend without a working toilet, so he filed an emergency grievance. (*Id*.) After the emergency grievance was submitted, Correctional Officer Payne immediately contacted Correctional Officer Finbody, who arrived with an inmate plumber, who effected and completed the repair in less than five minutes. (*Id*.)

On October 31, 2016, while repair of the toilet was being conducted, Duncan was present when his cellmate asked the free staff maintenance man why there was no response by unit officers to requests submitted on earlier dates. (*Id*.) The maintenance man responded by saying, "we just received notification on the daily report sheet today, October 31, 2016, before today we knew nothing of a problem here." (*Id*.)[4]

Duncan become even more emotionally disturbed by the fact he had been forced to remain in a cell with exposed raw sewage and foul water and had to endure the foul smell for seven days unnecessarily. (*Id*.) Duncan was left to suffer through serious health problems during and after the time the toilet was repaired, such as migraine headaches, vomiting, stomach problems, dizziness, and loss of appetite. (*Id*.) Defendants failed to respond to Duncan's request for relief from the toilet, were dismissive by denying Duncan access to a working toilet during the night and during lock downs, and were constantly lying about placing work orders. (*Id*.)

---

[4] Plaintiff claims in his First Amended Complaint at paragraph 10 that his toilet was "immediately" repaired on October 28, 2016. However, in paragraph 11, plaintiff claims his toilet was being repaired on October 31, 2016. The court is unclear if plaintiff's toilet required additional work on October 31, 2016 or if this is a typo. Nevertheless, this discrepancy has no bearing on this report and recommendation.

**B. Defendants' Motion for Summary Judgment**

On April 2, 2020, Defendants filed the instant motion for summary judgment. (ECF No. 37). Defendants assert they are entitled to summary judgment because: (1) Duncan cannot meet his burden of proof that Defendants had actual knowledge of plumbing issues regarding Duncan's toilet; and (2) Defendants are entitled to qualified immunity. (*Id*.) Duncan did not file an opposition.

## II. LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. (*Id.*) Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the

moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." (*Id.)* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III. DISCUSSION

### A. Civil Rights Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d

1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[.]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

**B. Count I and II – Eighth Amendment Violations**

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1995). Prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and quotation marks omitted).

Where the conditions of confinement are challenged, a plaintiff must make two showings. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). First, the plaintiff must make an "objective" showing that the deprivation was "sufficiently serious" for an Eighth Amendment violation. *Id*. While routine discomfort is not enough for a violation, deprivations denying "the minimal civilized measure of life's necessities" are sufficient to form a violation. *Id*. (quoting *Rhodes*, 452 U.S. at 347). The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining the violation. *Johnson,* 217 F.3d at 731. More modest deprivations can also form the

objective basis of a violation, but only if such deprivations are lengthy and ongoing. *See Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996).

In addition to the objective harm, a violation of the Eighth Amendment requires a showing that the "subjective state of mind of the prison officials was culpable." *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). Where inmates challenge the conditions of their confinement, the Court applies the deliberate indifference standard. *Id*. at 303. The deliberate indifference standard requires Duncan to prove the "official[s] know[ ] of and disregard[ ] an excessive risk to inmate health or safety . . . ." *Johnson*, 217 F.3d at 733 (quoting *Farmer*, 511 U.S. at 837). Duncan must show Defendants had actual knowledge of his basic human needs and deliberately refused to meet them. *Johnson*, 217 F.3d at 734. Whether an official possessed such knowledge "is a question of fact subject to demonstration in the usual ways . . . ." *Id*. (quoting *Farmer*, 511 U.S. at 842).

As to the objective element, Defendants do not dispute Duncan's toilet had plumbing issues. (*See* ECF No. 37 at 7) (argument section only refers to whether the correctional officers had actual knowledge of the overflowing toilet). Accordingly, it is undisputed that a toilet overflowing with raw sewage is a deprivation that is sufficiently serious to show a violation of the Eighth Amendment. Thus, the court finds the objective element for violation of the Eighth Amendment is satisfied.

As to the subjective element, Defendants argue none of the officers that Duncan alleged he informed about the toilet issues had actual knowledge of the overflowing toilet until October 27 and 28 when a work order was filed, (ECF No. 37-1 at 2-3), and the toilet was fixed on October 28. (ECF No. 37 at 7).

Based on the evidence before the court, and in viewing all the facts and drawing all inferences in the light most favorable to Duncan, the court finds summary judgment should be granted in favor of Defendants on both Eighth Amendment claims. Defendants have, on the basis of authenticated evidence, shown that the record forecloses the possibility of a reasonable jury finding in favor of Duncan. *Celotex*, 477 U.S. at 323. Accordingly, the burden shifts to Duncan to "designate specific facts demonstrating the existence of

genuine issues for trial." *In re Oracle Corp*., 627 F.3d at 387. Duncan is unable to carry this burden.

Duncan's Complaint alleged that he informed all the defendants about the overflowing toilet on consecutive days that spanned a week. (ECF No. 8 at 6). First, he claims he initially told Defendants Robinson and Rynerson on October 21, 2016 of the issues. (*Id*.) However, Defendants provided the Shift Roster for October 21, which shows Rynerson was not working at the prison that day, and Rynerson's Declaration, in which Rynerson claims to have no knowledge of the overflowing toilet. (ECF Nos. 37-3, 37-11). Robinson's Declaration claims he had no knowledge of the problem on October 21, 2016, and no other inmates complained of odor during the period of October 21 to October 28, 2016. (ECF No. 37-10).

Next, Duncan alleged that he told Defendant Johnson about the overflowing toilet on October 23, 2016. (ECF No. 8 at 6). However, Defendants submitted a declaration from Johnson which states, "[Duncan] never advised me, on or about October 23, 2016, that the toilet was backing up." (ECF No. 37-8). Johnson further declares that no other inmates complained of odor during the period of October 21 to October 28, 2016. (*Id*.)

Duncan further alleges on October 24 and 25, 2016, he told Defendant Kelly of the toilet overflowing. (ECF No. 8 at 6). Defendant Kelly also submitted a Declaration stating, "[Duncan] never advised me, on or about October 24 or 25, 2016, that his toilet was backing up." (ECF No. 37-9). Kelly's declaration also states no other inmates complained of odor during the period of October 21 to October 28, 2016. (*Id*.)

Duncan also alleges he told Defendant Haskell about the overflowing toilet on October 26, 2016. (ECF No. 8 at 6). Haskell's Declaration states he has no recollection of this event and Duncan never advised him the toilet was overflowing. (ECF No. 37-7). Haskell's declaration then states no other inmates complained of odor during the period of October 21 to October 28, 2016. (*Id*.) The Declaration also states Haskell is unaware of an institutional lockdown, for four hours, on October 26, 2016, and a lockdown of such duration would have been documented. (*Id*.)

In sum, Defendants have provided authenticated evidence establishing they did not have actual knowledge the toilet was overflowing. Defendants have therefore met their burden on summary judgment to establish that no reasonable jury could rule in Duncan's favor. *Celotex*, 477 U.S. at 323. Accordingly, the burden shifts to Duncan to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp*., 627 F.3d at 387. Having not opposed Defendants' motion for summary judgment, Duncan failed to carry this burden. Duncan was given notice of the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1988) on April 3, 2020. (ECF No. 41). Both *Klingele* and *Rand* require courts to advise prisoner pro se litigants of Rule 56 requirements. 849 F.2d at 411-12; 154 F.3d at 956. Even with notice of the requirements, Duncan did not submit an opposition or any responsive evidence to Defendants' motion. Duncan has thus provided no specific facts to illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.

Therefore, the Court recommends Defendants' motion for summary judgment be granted regarding Counts I and II.

**C. Count III – Fourteenth Amendment violation**

Although Defendants did not directly address Count III in the motion for summary judgment, based on the court's findings above, this claim also fails as a matter of law. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. V. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "A successful equal protection claim may be brought by a 'class of one,' when the plaintiff alleges that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). To state an Equal Protection claim, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace*

*v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation marks and citation omitted) (rejecting equal protection claim where inmate failed to show that he was treated differently than any other inmates in the relevant class).

In this instance, the complaint has not identified what relevant class Duncan belonged to for purposes of an Equal Protection Claim. Rather, the complaint merely states that other inmates had their toilet and plumbing issues fixed and he did not. (*See* ECF No. 8 at 8).

Even if the court assumes that prison inmates with non-working toilets is a protected class, it is undisputed that Defendants did not know of Duncan's plumbing issue until October 27 and 28, (*See* ECF No. 37-1 at 2-3), and the toilet was fixed on October 28. (ECF No. 8 at 7). Thus, there is no evidence in the record to establish that Duncan was treated worse from any other inmates who had a non-working toilet. *See Thornton v. City of St. Helens,* 425 F.3d 1158, 1166 (9th Cir. 2005) ("An equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff.") (internal quotation marks omitted). Rather, the undisputed evidence establishes that Defendants did not know about Duncan's plumbing issues, and once those issues were raised, the issue was rectified. Accordingly, as a matter of law, Duncan is unable to demonstrate a material issue of fact remains regarding his equal protection claim.

Therefore, the Court recommends that Defendants' motion for summary judgment also be granted regarding Count III.[5]

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends Defendants' motion for summary judgment (ECF No. 37) be granted

[5] Because the court finds that no Eighth Amendment or Fourteenth Amendment violations occurred, it need not address Defendants' arguments related to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (stating that if there is no constitutional right that was violated, there is no need for further inquiries into qualified immunity).

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 37) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly.

**DATED**: July 10, 2020.

**UNITED STATES MAGISTRATE JUDGE**